BENJAMIN F. BROWN *vs.* EDWARD T. T. SMITH.

Dukes County. March 7. — June 28, 1877. ENDICOTT & SOULE, JJ., absent.

In an action on a promissory note by the payee against the maker, on the issue of payment, it appeared, by an agreement of even date between the parties, that the maker was to transfer to the payee certain shares of stock in a corporation as security for the payment of the note, and, in case of his failure to pay, the payee was to take the stock in full satisfaction; that, before the note became due, the maker executed an instrument purporting to be a transfer of the stock to the payee, and produced a certificate of stock, which stated that the maker was owner of the stock, and that it was only transferable on the books of the corporation; and that these instruments, together with the original agreement, were deposited by mutual consent with a third person. *Held*, that the transfer and certificate were admissible in evidence; that it was competent for the judge, who tried the case without a jury, to find that the third person held the stock as the agent of the plaintiff after the maturity of the note without payment, and that the payee waived any further tender of the stock; that the transfer conveyed a title between the parties; and that the maker might testify that he had paid for the stock in full.

CONTRACT on two promissory notes, each for $750.00, dated September 1, 1873, signed by the defendant and payable to the plaintiff or order, one twelve months, and the other eighteen months, after date. Writ dated September 1, 1875. The answer alleged payment, and set up a contract under seal signed by the parties to this action, and alleged performance by the de-

fendant of the terms thereof. This contract was dated September 1, 1873, and after reciting the giving of the notes above described, proceeded as follows :

"Now therefore said Smith hereby agrees to transfer to said Brown shares in the American Coal Barge Co. to the amount of $4000 par value as security for the payment of said notes. And in case of a failure by the said Smith to pay said notes, the said Brown is to take all of said $4000 of said stock in payment of said notes and in full satisfaction of all demands occasioned by said failure to pay said notes."

At the trial in the Superior Court, before *Pitman*, J., without a jury, the making of the notes and the execution of the agreement were admitted. It appeared that neither of the notes was paid at maturity ; that when the last note fell due, the other remained unpaid; that the parties resided at Tisbury in this Commonwealth ; and that the American Coal Barge Company was organized at Bristol, in the State of Connecticut, under the laws of that state.

To prove the performance of the agreement on his part, the defendant offered in evidence a written transfer, signed by him, dated Bristol, Conn., January 13, 1874, and purporting to assign and transfer to the plaintiff one hundred and sixty shares of the capital stock of the American Coal Barge Company standing in the name of the defendant.

He also offered in evidence, for the same purpose, a certificate of stock, purporting to be signed by the president and secretary of the American Coal Barge Company, and dated Bristol, Conn., September 9, 1872, certifying that E. T. T. Smith was the owner of one hundred and sixty shares of the capital stock of the American Coal Barge Company. This certificate stated the par value of each share to be $25.00, and bore upon its face the following clause : "Transferable only on the books of said company by E. T. T. Smith, or his attorney, on surrender of this certificate."

The defendant also offered evidence that in July, 1875, and afterwards on the day of the date of the writ, after it was made and property attached, but before service upon him, he offered the transfer and certificate to the plaintiff, who declined to take them without giving any reason, and did not then nor since de-

mand any different assignment of the stock; but who stated, at the time of the tender, that he would not take the stock any way, that he did not desire it, but wanted his money.

The plaintiff objected to the admission of the transfer and certificate in evidence, but the judge admitted them.

It appeared that, after the agreement was executed, this, together with the transfer and certificate, were placed by mutual agreement in the safe of a third person, where they remained until the defendant got them to make his tender.

No evidence was offered of the genuineness of the signatures ·ppearing on the transfer and certificate; but the defendant tes-tified, against the plaintiff's objection, that he received the cer-tificate of stock from the secretary of the American Coal Barge Company, that it was all right as represented by the secretary, and that he had paid the full par value of the stock by a convey-ance of land to the secretary. The judge admitted this evidence *de bene*, but held it to be immaterial in the decision of the case.

The plaintiff also objected that the transfer and certificate did not show any transfer of the shares from the defendant to the plaintiff, and that there never had been any transfer of the shares as provided in the agreement.

It appeared that no transfer other than that above stated was ever made, and that the plaintiff never demanded or requested of the defendant any other assignment.

Upon the above evidence, the judge held that it was compe-tent to find that the plaintiff, by an absolute refusal to take the stock had waived any other or further tender of performance or assignment on the part of the defendant, and found as a fact that he did so waive and dispense with any further performance, and found for the defendant; and the plaintiff alleged excep-tions.

*G. Marston*, for the plaintiff.

*A. R. Brown & E. A. Alger*, for the defendant.

AMES, J. According to the written agreement, which bear the same date as the notes in suit, and which was apparently a part of the same transaction, the defendant was bound to trans-fer the stock in question to the plaintiff as collateral security for the notes. In pursuance of this agreement, and before the first of the notes had become due, the defendant executed an instru-

ment purporting to be a transfer of one hundred and sixty shares of the stock to the plaintiff, and also produced a certificate to the effect that the defendant was the owner of those shares. It appears from the bill of exceptions that these papers, namely, the agreement, the certificate and the transfer, were by mutual agreement deposited with a third person. We must infer that the parties knew what these papers were, and it does not appear that the plaintiff made any suggestion that they were not in conformity to the contract, or that the transfer was insufficient or informal, or that he had not received the collateral security to which he was entitled. As a part of the transaction in which both parties were concerned, they were admissible.

This proceeding was apparently intended as a transfer of the stock as collateral security for the notes, and we must infer from the bill of exceptions that it was so understood by both parties. But, under the option allowed by the agreement to the defendant, it was contingent and uncertain, until the maturity of the notes, which of the two parties was to be the ultimate owner of the stock. If the defendant saw fit to pay the notes, the transfer of the stock would have to be cancelled, which could conveniently be done by returning the papers to him. If, on the other hand, he did not pay the notes in money, the plaintiff was bound to accept the stock in full satisfaction, in which event all the papers would belong to him. It was competent for the judge, sitting without a jury and trying the facts as well as the law of the case, to find as a fact that the third person, with whom the papers were deposited, was the agent and trustee or representative of both parties. He may have been considered as holding the papers in trust, as collateral security for the plaintiff until the maturity of the notes, and as the absolute property of the plaintiff, if the notes were not paid at maturity. No new or additional transfer was necessary in that case, for the stock had already been effectually transferred; and the contingency which was to change this transfer from a conditional to an absolute one had occurred. If the depositary was, on the happening of that contingency, the agent and representative of the plaintiff, no formal tender of a transfer or conveyance to the plaintiff was necessary. He was already in possession, by his agent, of all that the defendant was bound to deliver; and the

judge had a right to find as a fact, upon the evidence, that the plaintiff waived or dispensed with any further performance on the part of the defendant. It does not appear that the depositary assumed any trust or obligation, except to hold the shares for the benefit of whichsoever of the parties might ultimately by the terms of the contract prove to be the owner of the shares, and it is difficult to see for what other purpose he was needed.

The objection that the transfer could only be upon the books of the corporation, if open to the plaintiff at this stage of the case, is in our opinion untenable. It was sufficient to convey a title, as between the original parties, which the plaintiff could at any time have perfected by having it recorded in the books of the corporation, and taking a new certificate in his own name. We have no doubt that the defendant was rightfully permitted to support the paper evidence of his right to the stock by testifying that he had paid for it in full.      *Exceptions overruled.*